Eastern District of Kentucky
FILED

OCT 1 1 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-CV-326-KSF

STEPHANIE A. DIXON                                                              PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

MS. SHERYL FISHER, ET AL.                                          DEFENDANTS

\*\*\*     \*\*\*     \*\*\*     \*\*\*

Stephanie Dixon, an individual currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut, has submitted a *pro se* civil rights complaint, together with a motion to proceed *in forma pauperis*. After consideration of the supporting financial information, the motion will be granted by separate Order.

The complaint is currently before the Court for initial screening. 28 U.S.C. §1915(e); 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). For the reasons to be discussed below, this matter will be dismissed.

DEFENDANTS

As defendants, the plaintiff has named three persons who supervised her placement at Dismas Charities, a self-described "halfway house for felons," on Georgetown Street in Lexington, Kentucky. The named defendants are Ms. Sheryl Fisher, Director; Ms. Christina Meyers, a federal counselor; and Mr. Paul Hagans, a state counselor.

CLAIMS

The plaintiff claims that she was falsely accused of violating a condition of her halfway house placement; she was convicted with evidence insufficient to support the conviction; and her character

was defamed.

## RELIEF REQUESTED

The plaintiff seeks damages, her costs, and injunctive relief in the form of reinstatement of her right to early release.

## CLAIMS AND FACTUAL ALLEGATIONS

The following is a summary or construction of the plaintiff's factual allegations, as written on the complaint form or as gleaned from the documents which she attaches as exhibits.

On January 18, 2006, the plaintiff was placed in Dismas Charities for a term of six months, a provisional requirement for early release after she had completed the Federal Bureau of Prisons ("BOP") drug rehabilitation program.[1] According to the later-complained-of incident report signed by Defendants Meyers and Hagans, one of the conditions at Dismas was that Dixon "actively participate in our Job Search program by going to a minimum of five (5) places per day to submit applications for employment." Attachment No. 1.

However, Meyers and Hagans found that the plaintiff was slow in starting the search, not starting until January 23, 2006, and then did not try very hard, so that by March 8, 2006, she had submitted only 100 applications, when the number should have been 170 applications. *Id.* On March 1, 2006, Defendant Hagans gave the plaintiff a direct order to have full-time employment by the 5:00 p.m. close of the business day on March 8, 2006, or she would be charged with violating a condition of a community program.

---

[1]   In 18 U.S.C. §3621, the United States Congress has provided that those federal inmates who have been "convicted of a non-violent offense" and have completed a drug rehabilitation program are eligible for up to a one-year reduction in sentence.  The instant plaintiff had finished the institutional part of the program and had been placed at Dismas Charities for the community portion of the program.

Dixon's status as of the close of March 8, 2006, is the core of the instant dispute. According to the plaintiff, on March 6th, she obtained part-time employment at a Rally's restaurant, which could have led to full-time. On March 7th and 8th, she was trying to obtain the clothes, transportation, and food handler's permit which the Rally's job required. Additionally, on the morning of the 8th, she had purportedly applied for and gotten a full-time job at a temporary employment agency, Command Center, but that employer was unable to reach Defendant Hagans by phone in order to actually hire her before the deadline at 5:00 p.m.

On March 8, 2006, the plaintiff was charged with the offense of violating a condition of the community program, and she was ultimately convicted of that offense by the halfway house's disciplinary committee (the "CDC"). On March 16, 2006, the CDC, chaired by Defendant Fisher, recommended that Dixon suffer two sanctions, a disciplinary transfer from the halfway house to a secure facility and the loss of her eligibility for early release. A BOP Disciplinary Hearing Officer ("DHO") concurred on April 5, 2006, and these sanctions were then imposed on the plaintiff.

Dixon unsuccessfully appealed the conviction through the BOP administrative remedy program to exhaustion,[2] and on October 2, 2006, she filed the instant cause of action.

### DISCUSSION

To the extent that the plaintiff challenges her conviction by the CDC and DHO on the ground that the evidence did not support the conviction, the Court construes that she is making a due process

---

[2] The BOP's Regional Director supported the decision, stating simply, "You did not fully seek full time employment and did not obtain full time employment by the deadline date"; and also found that the decision was in substantial compliance with policy, Program Statement 5270.07, Inmate Discipline. The Administrator of Inmate Appeals at the BOP's national office concurred, agreed that the plaintiff's due process rights were upheld, and found that "[t]he greater weight of the evidence supports the CDC's decision, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with policy."

3

claim.

In *Superintendent v. Hill*, 472 U.S. 445 (1985), the Supreme Court of the United States set out what standard of evidentiary support satisfies constitutional due process in prison disciplinary proceedings. The Court held that due process requires that a prisoner's good conduct time, whereby the prisoner may achieve early release, cannot be forfeited unless there is "some evidence" of his guilt. *Id.* at 455-56. The Supreme Court wrote as follows:

> Assuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55. Thus, judicial review of a decision in a prison disciplinary proceeding which affects the amount of time a prisoner must serve does not involve a redetermination of an inmate's innocence or guilt. A court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support. *Id.* at 457.

In the case *sub judice*, the plaintiff has made the same arguments herein as she made in her BOP appeals. She stresses reasons why she did not start the job search on January 20th, explains that many employers on the halfway house's job list were no longer available so that it was harder to get in 5 applications per day, faults Counselor Hagans for not being accessible on the day of the deadline, and complains that the defendants would not accept certain employment which she thought she could get.[3]

_____

[3] The plaintiff alleges that the defendants had rejected a job she could get at Perkins' Pancake House because of drug involvement on its premises and stated in later documents that they would not have okayed the Command Center position because that business had refused to let the authorities make visits on site to evaluate the participants'

Dixon's claims failed in the disciplinary proceeding and must fail herein. The CDC chair set out the evidence relied upon to find the plaintiff guilty, including "[t]he information contained in the Incident Report stating that as of March 8, 2006 at 5:00 p.m. Ms. Dixon had not obtained fulltime employment as directed." The decision itself, attached to the complaint, shows that the disciplinary body considered the plaintiff's claim that she was trying to comply with the requisites for the Rally's job, but it found her efforts tardy. It also considered her claim that Command Staffing had offered her work prior to the deadline, but was not persuaded by the Command Center's letter, which did not specify when they even saw the plaintiff.

Despite the instant plaintiff's protestations to the contrary, this Court finds that there is "some evidence" that she did not have a full-time job by 5:00 p.m. on March 8, 2006, and she was, therefore, violating a condition of her stay at the halfway house. An independent assessment of witnesses' credibility is not required of this Court. *Superintendent*, 472 U.S. at 455. Moreover, the credibility determinations of the hearing officers cannot be disturbed on appeal. *See Wagner v. Seely, et al.*, 915 F.2d 1575, 1576 (7th Cir. 1990) (unpublished), *cert. denied* 501 U.S. 1219 (1991).

Having considered the matter, the Court finds that there was some evidence in this case that the plaintiff was guilty of violating a condition of the community program by not having procured full-time employment by March 8, 2006, thereby committing the offense charged. *See Wagner,* 915 F.2d at 1575. Therefore, she is not entitled to the relief she seeks on the ground that her conviction was obtained in violation of her due process rights.

Plaintiff Dixon also claims that the defendants have made false statements, defaming her. Defamation is a state tort, over which this Court ordinarily does not have jurisdiction. The Court

---

performance.

5

does have discretion as to whether to entertain pendent jurisdiction over state claims filed in connection with and arising out of the same facts as §1983 actions. *Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004 (6th Cir. 1987). However, when the federal claims against the defendants should be dismissed, then the pendent state claims should be dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Gregory v. Hunt, et al.*, 24 F.3d 781 (6th Cir. 1994).

Since the instant plaintiff has no federal claim, the Court declines supplemental jurisdiction to consider the state claim. See 28 U.S.C. §1367(c)(3) (district court may decline to exercise supplemental jurisdiction if the Court has dismissed all claims over which the Court has original jurisdiction).

CONCLUSION

Accordingly, the Court being advised, **IT IS HEREBY ORDERED** that this action is **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion in favor of the defendants.

This the _11th_ day of October, 2006.

*KSF*
_____
KARL S. FORESTER, SENIOR JUDGE